IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| Walden Fleet Group, Inc., Southview Chevrolet, Co., and Denny Hecker's Cadillac – Pontiac – GMC, Inc.<br><br>Plaintiffs,<br><br>Vs.<br><br>GMAC Inc. formerly doing business as GMAC, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court File No. 10-cv-00068-JRT-RLE<br><br>**PLAINTIFFS' MEMORANDUM OF LAW<br>IN OPPOSITION TO DEFENDANT'S<br>MOTIONS FOR DISMISSAL** |

## INTRODUCTION

Defendant GMAC, Inc. ("hereinafter "GMAC") argues that the Plaintiff dealerships have not been directly injured, or injured at all, by GMAC's unlawful retention of trust monies paid to the dealerships by consumers for the specific purpose of payment of taxes, title and license ("TTL)  and lien payoffs, where applicable.  GMAC is simply wrong.  Its conduct of retaining these trust monies is not supported by any known law.

Plaintiffs continue to have the legal obligation to directly remit these trust payments on behalf of the customers or be directly liable for their nonpayment.  Due directly to GMAC's conduct, Plaintiffs have been looked to for the direct payment of TTL and lien payoffs.  Accordingly, Plaintiffs have a direct personal stake in the outcome of this action and have been directly injured, thereby triggering the jurisdiction of this Court, as alleged specifically in their complaint.

GMAC ignores the following material facts that doom its motions:

1.    At issue are trust or trust-like monies that were never subject to the security interests of GMAC in Plaintiffs' assets as a matter of law.  It is basic Black letter law that a security interest does not attach unless the debtor has rights in the collateral.  *See Infra.*[1]  Accordingly, GMAC wrongfully took third parties monies designated by Plaintiffs' customers for the payment of TTL and lien payoffs AND for which Plaintiffs were at all times directly liable and accountable.

2.    GMAC's conduct directly breached the agreements between the parties.  The written agreements establishing GMAC's credit relationship with Plaintiffs provide Plaintiffs with standing.

3.    Over 200 complaints were filed against Plaintiffs in one day alone with the authorities for the nonpayment of TTL and lien payoffs.[2] These are the very entrusted monies at issue that should have been released  by GMAC to Plaintiffs from each closing to pay the related TTL and lien payoffs, as required by Minn. Stat. § 297B.10 (b).[3]

4.    Instead, GMAC kept all proceeds from the transactions including those funds designated by consumers for payment of related TTL and lien

---

[1] GMAC's footnote on the first page of its memorandum belies the fact that as a matter of law entrusted monies cannot be used to satisfy subsequent judgments.  These monies continue to retain their status as monies not properly subject to GMAC's security interest. Moreover, Plaintiffs position is *in the alternative* – that either GMAC release these monies directly to Plaintiffs or remit them directly to the State or various lien holders. *See* Complaint of Record.  [Attached as Exhibit A to the Transmittal Affidavit of William R. Skolnick ("Skolnick Aff.') for ease of reference in briefing this motion in an academic setting.]

[2] *See* Skolnick Aff." at Exhibit F, pg. 1.

[3] The specific statutory provision states:

  (b) Any person who collects the tax imposed under this chapter (sales tax on motor vehicles) from a purchaser and willfully fails to remit the tax is guilty of a felony.

Minn. Stat. § 297B.10 (b).   Thus, it is undisputed that Plaintiffs at all times had a legal obligation to remit the sales taxes paid in trust by customers at the time of purchase directly to the State of Minnesota.  By GMAC's refusal to allow Plaintiffs to remit these monies directly, Plaintiffs have now become directly liable for payment of the same, thereby evidencing injury - - both monetary and otherwise.

payoffs. The Plaintiffs had a legal obligation to properly handle these entrusted or escrowed funds, which GMAC directly interfered with.

5.      Plaintiffs and their owner, Dennis E. Hecker ("Hecker') continue to have the legal obligation to pay the TTL and lien payoffs, which is made impossible by the wrongful conduct of GMAC retaining these monies.

6.      Upon Plaintiffs' default as stated in the agreements between the parties, GMAC was prohibited from attaching monies that were directed by law to be otherwise handled. GMAC breached these agreements and Plaintiffs as named parties have standing to seek damages directly for the breaches.

It is undisputed that the government views consumer payments at closing for TTL and lien payoffs as trust funds and NOT monies for creditors such as GMAC to apply towards their commercial debts.[4]  It is also undisputed that the law imposes a duty upon all automotive dealerships in the State of Minnesota to collect and remit TTL and other monies on behalf of consumers in all transactions. Thus, Plaintiff dealerships are directly liable for the nonpayment of TTL and lien holdings from closings when monies designated by their customers at the time of purchase. Moreover, as evidenced by recent events - - the officer and owner of corporate entities can be held directly liable and subject to criminal sanctions for the nonpayment of TTL and lien payoffs, as is the case with Plaintiffs.

## THE LEGAL STANDARD

The District of Minnesota has uniformly invoked the following analysis when deciding motions to dismiss under Rule 12(b)(6):

---

[4]*See* Skolnick Aff. at Ex. K, ¶17.   It is believed that GMAC refused and continues to refuse to provide any accountability for monies it wrongfully retained and other millions of dollars it attached due Plaintiffs from GM for dealership closings because of its potential liability to the State and others. Also, GMAC improperly preferred itself to other creditors of Hecker and the Hecker entities to avoid pursing claims in bankruptcy.

1. "[a] court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant." Morton v. Becker, 793 F.2d 185, 108 (8th Cir. 1986)

2. "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." In re Guidant Corp, etal., 484 F.Supp2d 973, 977 (D. Minn. 2007) *quoting* Conley v. Gibson, 355 U.S. 41, 45-56 (1957).

3. "[a] court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint." Id. *citing* Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

GMAC is proceeding under two different sections of Rule 12. First, GMAC claims an alleged lack of subject matter jurisdiction based on lack of standing. Fed.R.Civ.P. 12 (b) (1). The second basis is for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12 (b) (6). GMAC's entire argument is premised upon its misstatement that Plaintiffs have not suffered any damages. Nothing could be further from the truth. The existence of hundreds of complaints filed by consumers for which Plaintiffs and their owner, Hecker, are being held directly liable speaks for itself.

But for GMAC's failure and refusal to provide directly to Plaintiffs monies entrusted by consumers for remittance to the State of Minnesota and /or lien holders, Plaintiffs would not now be faced with direct liability with criminal consequences. GMAC had no more entitlement to entrusted monies for TTL and lien payoffs received

by Plaintiffs from consumers than it would have against monies provided by third parties
to a title company (GMAC happened to finance) for submission on behalf of the buyer /
seller for the payment of real estate taxes, recording fees, lien payoffs and other
designated payments. Trust monies do not change their character by merely
commingling them with other monies, as GMAC apparently did when handling the
financial transactions at issue.

## MATERIAL, RELEVANT FACTS

**A.    The Complaint of Record.**

Plaintiffs' factually detailed complaint contains the following seven separate
counts: 1) conversion / misappropriation of monies; 2) violation of Minn. Stat.
§297B.10 (b) / breach of contract; 3) lender control liability; 4) breach of fiduciary
duties; 5) constructive trust; 6) unjust enrichment; and 7) demand for an accounting.
*See* Skolnick Aff., Ex. A.[5]

The main crux of Plaintiffs' complaint is that GMAC wrongfully attached monies
it was not entitled to – namely, those specific entrusted and designated monies provided
by consumers in the normal course of Plaintiffs' business for subsequent payment to the
State of Minnesota and lien holders, where applicable.   By applying these monies to
GMAC's outstanding commercial loans owed by Plaintiffs, these trust funds were
converted to GMAC's own use. Second, and equally important, by mishandling

---

[5] Plaintiffs' voluntarily dismissed their prior action brought by previous counsel, which
does not preclude them from bringing the present action after learning of the harm and
damages caused by GMAC's conduct for its breaches of its own agreements with
Plaintiffs and misappropriation of entrusted consumer funds.  Plaintiffs have not received
any sort of meaningful accounting from GMAC as to how it applied the millions of
dollars received from its partner General Motors for the closure of the dealerships.

consumer trust funds in this manner, GMAC undeniably breached its own agreements

with Plaintiffs and directly violated Minnesota law in the process.

GMAC never had the legal ability to attach property not belonging to Plaintiffs.

Nor did GMAC ever have the legal entitlement to hold entrusted monies that it knew

Plaintiffs were accountable to consumers for the payment of TTL and lien payoffs.

Plaintiffs' other counts will be addressed more fully in the legal argument

together with the factual allegations found in the complaint.

**Specific Allegations of Harm and Injury to Plaintiffs:**

Plaintiff's complaint does in fact contain allegations of *injury- in- fact* to

Plaintiffs, as evidenced by the following specific paragraphs:

Count I alleging conversion / misappropriation of monies contains factual

allegations that are carried forward to Count II.  *See* Complaint at ¶¶s 23, 24, 25, 26, 28,

and 29.  The following allegation sets forth the reality of the situation:

> 28.   GMAC without the authority or permission of Plaintiffs wrongfully applied
> all proceeds received from the sale of automobiles it financed without regard
> to the fact that certain designated monies belonged to the State of Minnesota
> and other third parties.  <u>It is believed that GMAC intended to permanently
> deprive Plaintiffs of their ability to obtain these monies and make certain that
> they were properly forwarded to the State of Minnesota and others</u>.
> (emphasis added)

Moreover, Plaintiffs set forth a demand for relief in Count I as follows:

> 31.   <u>In the alternative or in addition to other remedies</u>, GMAC is directly liable to
> the State of Minnesota and others for the payment of the above specified
> amounts <u>**on behalf of the Plaintiffs**</u>, which it wrongfully converted.
> (emphasis added)

Plaintiffs had at all times and continues to have the direct liability as the

dealerships under whose names the transactions took place (whether or not GMAC

obtained all proceeds from closing) for the proper handling and payment of the TTL and

lien payoffs at issue.   This fact is undisputed, and conveniently ignored by GMAC in its

moving papers.

Count II for breach of contract and statutory violations of entrusted consumer

monies includes the following allegation that must be considered:

38. **As a direct and proximate result of GMAC's wrongful conduct,
Plaintiffs incurred and continue to incur damages exceeding of [sic]
$75,000 for which GMAC is directly liable**.  (emphasis added)

Count III involving lender control liability issues contains the following

allegations:

40.  Whenever a lender exercises control over the day to day activities of its
borrower and concurrently engages in inequitable conduct, its is liable as a
creditor in possession for its wrongful conduct in diverting monies for its own
benefit that rightfully belong to others – in this case, the State of Minnesota
and other third parties.

41.  Plaintiff's owner, Hecker, is current being investigated and pursued by the
State of Minnesota for outstanding taxes, title and license fees that GMAC
failed to timely, or at all, voluntarily turnover to the State of Minnesota and
other third parties for the financial transactions GMAC controlled to the
exclusion of Plaintiffs.[6]

42.  The wrongful retention of these monies by GMAC unjustly benefits GMAC
**at the expense of others including, but not limited to Plaintiffs**, the State of
Minnesota and innocent third party consumers.  (emphasis added)

43.  In the alternative or in addition to other remedies, GMAC is directly liable to
the State of Minnesota and others for the payment of the above specific
amounts **on behalf of Plaintiffs**, which total exceeds $75,000.  GMAC's
wrongful conduct in retaining third party funds that should have immediately
been paid over to the State of Minnesota and others shortly after the
completed sales transactions cannot be ignored. (emphasis added)

---

[6] As confirmed by the Affidavit of Marsh J. Halberg ("Halberg Aff."), Plaintiffs are
included in the "Hecker Entities" referenced in the criminal indictment that came down
after the filing of this action for which Hecker is being held criminally liable.
Accordingly, it remains undisputed that Plaintiffs are directly injured by the nonpayment
of the TTL and lien payoff monies wrongfully retained by GMAC.  Plaintiffs reserve the
right to later amend the complaint to add Hecker as an additional Plaintiff.

Again, the ongoing direct legal obligation of Plaintiffs for the remittance of these third party trust monies to the State of Minnesota and lien holders represents a direct injury.  Whether Plaintiffs themselves remit these third party monies to the State of Minnesota and lien holders or GMAC does so on their behalf, the fact remains that Plaintiffs have the outstanding legal obligations.  GMAC is certainly not entitled to hold onto these monies under the circumstances or it will be unjustly enriched at the expense of Plaintiffs and consumers.

Count IV for breach of fiduciary duties refers specifically to the "entrusted third party monies" and ties in the outstanding agreements between the parties, which Plaintiffs reasonably expected GMAC to properly honor.  *See* Complaint at ¶¶s 45, 46, and 47.  The following paragraph is found at the end of this Count:

48. **As a direct and proximate result of GMAC's breaches of its fiduciary duties, Plaintiffs incurred and continue to incur the damages in excess of $75,000.**   (emphasis added)

Plaintiffs' damages continue to be their liability for the remittance of the third party monies wrongfully retained by GMAC for which Plaintiffs are legally accountable and liable.

Count VI for unjust enrichment speaks for itself after reviewing the above facts. GMAC is not entitled to retain these entrusted third party monies at the expense of Plaintiffs and others.  Plaintiffs allege the following specific harm in this Count: "Moreover, GMAC failed and refused to be accountable for monies it collected in excess of those actually due and owing by Plaintiffs to Defendant GMAC."  *See* Complaint at ¶53.  It is believed that GMAC held onto excess monies received from General Motors

for the wind down of Plaintiffs' dealerships, which monies would have been available to Plaintiffs to pay the TTL and lien payoffs related to transactions at its businesses.

Count VII for an accounting represents a form of relief that should without question be granted under the circumstances.  In order for Plaintiffs to properly reconstruct the transactions directly controlled by GMAC, it is necessary to obtain this information.  If GMAC has done nothing improper, then it should not be resisting a full disclosure.  Plaintiffs have no other independent financial means in which to pay for the currently outstanding TTL and lien payoffs.

### The Agreements Attached to the Complaint.

Appended to the complaint are two separate agreements drafted by GMAC's attorneys and executed by all parties.  The first agreement is captioned "Forbearance Agreement" which contains recitals relating to the outstanding relationship between the parties.  GMAC refers to a "perfected security interest in Dealership's assets to secure all obligations that Dealerships owe to GMAC and Owner has personally guarantied payment of all obligations that Dealership owes to GMAC under his guaranty dated December 20, 1989 ("Personal Guaranty")."  *See* Complaint, Ex. A at ¶ II C. Accordingly, the security interest expressly applies ONLY to "Dealerships' assets."

The Forbearance Agreement also allowed the following: "Dealership will permit GMAC representatives to remain on Dealership's premises at Dealership's expense of $750 per day per representative ("Representative Fee").  *Id*. at  ¶ III. B. 4.  There exists no dispute that GMAC had representatives on Plaintiffs' premises during the relevant period of time.

Plaintiffs were required to simultaneous with the Forbearance Agreement execute the second attached document captioned "Voluntary Surrender Agreement." *Id*. at ¶ III. C.; *See Also* Complaint at Ex. B.  This agreement covered ONLY "collateral to GMAC and not entrusted third party monies, such as those at issue for TTL and lien payoffs.  The liquidation of collateral was intended to expressly <u>exclude by agreement</u> of the parties the very monies at issue, as evidenced by the following material contract provision:

> GMAC will apply the proceeds of the disposition and sale of the Collateral to the payment of the Indebtedness, and any other sums due or to become due under the Loan Documents, including attorneys' fees and expenses incurred in retaking possession of, transporting, storing, preparing for sale, and disposing of and selling the Collateral, in such order and manner as GMAC determines in its sole discretion, **unless otherwise directed by law**.  (emphasis added)

*See* Complaint at Ex. B, ¶ III. B.

Directed and required by law is the following mandate for Plaintiffs in each and every transaction at its dealerships:

> Any person who collects the tax imposed under this chapter [Excise and Sales Taxes], from a purchaser and willfully fails to remit the tax is guilty of a felony.

Minn. Stat. § 297B.10 (b).   To argue to the Court that "unless otherwise directed by law" does not encompass the monies at issue is nonsense.   By violating this provision and keeping these monies, GMAC breached the law and its own agreement with Plaintiffs.

### Proof that GMAC Knew it Improperly Handled Third Party Monies.

As alleged in the complaint, GMAC eventually after several demands from Plaintiffs released a portion of TTL monies it had improperly retained over a period of months.  *See* Complaint at ¶ 16.  However, GMAC refused to acknowledge that the lien payoff amounts should also be turned over.  *Id.*   This conduct evidences knowledge that

these monies were never those of Plaintiffs for GMAC to attach in the first instance.  See Complaint at ¶¶s 27 and 21.

**Plaintiffs' Prayer for Relief.**

Plaintiffs' clearly alleged entitlement to "...an order for judgment against Defendant GMAC for amounts due and owing, as alleged herein." *See* Complaint at pg. 14, ¶1.  Alternatively, Plaintiffs sought an order that GMAC directly remit these monies wrongfully retained to either the State of Minnesota or lien holders, as the case may be. Therefore, Plaintiffs are asserting damages and seeking a direct remedy on behalf of themselves for the monies they continue to be legally obligated to remit to the State of Minnesota and various lien holders.  These are the very monies that GMAC misapplied towards its own debt to avoid pursuing Plaintiffs in a bankruptcy proceeding.

**B.      Matters of Public Record.**

The public was extensively apprised of the alleged wrongdoing by Plaintiffs as part of the "Hecker Entities" and their owner, Hecker for the past approximate ten months.  This alleged wrongdoing directly involves the very monies at issue in this lawsuit.  Yet, GMAC holds steadfast to its misplaced legal argument for dismissal in order to avoid having this matter heard on the merits.

As early as June 17, 2009, the Department of Public Safety for the State of Minnesota announced to the public that the State Patrol was launching an investigation into the Denny Hecker Automotive Group, which includes the Plaintiffs, after receiving *near daily complaints by consumers* of the following two verbatim types:

> Consumers purchase a vehicle, pay the 6.5 percent sales tax as well as the title and license registration fees to the dealer, but never receive their title or license plates.

> Consumers trade in their vehicles and are later informed by their lender that the lien on that vehicle has not been paid off.

*See* Skolnick Aff. at Ex. B.  The State established a "special hotline to field calls from consumers" and published the number in this news release.  *Id.*

Plaintiffs Denny Hecker's Cadillac-Pontiac-GMC, Inc. ("Stillwater Cadillac") and Southview Chevrolet Co. ("Southview Chevrolet") are named in this public news release. *Id.*  This article and others clearly conclude that the authorities were becoming involved because of the numerous complaints involving these dealerships for failing to remit TTL and lien payoffs, which was made impossible by GMAC's wrongful retention of these monies.

The public news release informs the public of the following <u>liability to Plaintiffs</u> if these monies are not remitted or forwarded:

> It is a felony under Minnesota law for a dealership to fail to remit to the state tax collected from the sale of a motor vehicle, punishable by a prison term of up to five years and a fine not to exceed $10,000.  It is also a felony to fail to pay off a lien when a motor vehicle dealer takes a vehicle in trade when there is a lien on that vehicle, punishable by a prison term of up to three years and a fine not to exceed $6,000.

*See* Skolnick Aff. at Ex. B, pg. 2.  GMAC cannot in good conscience argue that its belated partial payment of these matters absolves it of its contractual obligations owing to Plaintiffs or its direct interference with Plaintiffs' legal obligations in the handling of these entrusted third party monies.

In various newspaper articles reported by the StarTribune, the State patrol reported that it had received complaints from residents in 15 counties and there were potentially other consumers with complaints.  *See* Skolnick Aff. at Ex. C. (note: Stillwater Cadillac is referenced as a dealership where a party did not receive title).   In

fact, the very dispute between Plaintiffs and GMAC is disclosed in this article from June 17, 2009, wherein Plaintiffs' then-attorney directly blamed GMAC for not paying TTL and outstanding liens for trade-in vehicles.  *Id.*

Similar articles were published in other public media sources such as Automotive News, Minnesota Radio's publication, Minneapolis – St. Paul Business Journal, news station media reports and other newspapers.  *See e.g.*, Skolnick Aff. at Exs. D, E, F, G., H, I and J.

Each and every one of these published articles support Plaintiffs' position that they and their owner are being held directly liable and accountable for the payment of TTL and lien payoffs, thereby establishing direct and personal harm. The mere fact that these monies claimed to be due by Plaintiffs are for their former customers, does not make Plaintiffs a once removed harmed party with no standing to bring their action.

## C.      Matters Embraced by the Complaint.

The criminal defense attorney representing the Hecker entities and Hecker in the alleged failure to remit the TTL and lien payoffs, Marsh J. Halberg ("Halberg"), provided a separate Affidavit, which contains facts that coincide with those stated above and found in the public record.  *See* Halberg Aff.  Halberg was present when the State Patrol executed its search warrants at Plaintiffs' business locations, and learned directly at that time of the unpaid TTL and liens for trade-ins on various vehicles from closings at Plaintiffs' dealerships.  *Id*. at ¶ 6.  Halberg confirms the establishment of a consumer hotline for complaints.  *Id*. at ¶ 7.

The exact amounts that are claimed by the government to be due and owing by Plaintiffs as part of the Hecker Entities for TTL and lien payoffs total approximately

$211,985.46, as more specifically set forth in the letter from United States Attorney Nicole A. English.  *See* Halberg Aff., Ex. 2.  Thus, there is definitely an outstanding liability on the part of Plaintiffs as set forth in this letter.

The criminal indictment of Hecker contains a specific paragraph referencing the alleged nonpayment of TTL and liens for trade-ins, which provides in part:

> **17.**   The material false statements, false representations, and omissions included misrepresentations and omissions to retail customers of Hecker organization dealerships.  Namely after HECKER and the Hecker organization received vehicle sales proceeds, including amounts intended by the consumer to pay for sales tax, title, and license fees, in a significant number of instances, Hecker and others at his direction intentionally and fraudulently kept the tax, title, and license portion for the benefit of HECKER and the Hecker organization, **rather than holding that portion in trust and paying it promptly to the state**.  (emphasis added)

*See* Halberg Aff. at ¶8 and attached portion of indictment; *See Also* Skolnick Aff., Ex. K for entire reproduction of indictment.

As previously pointed out, the monies at issue are trust funds, as set forth by the United States Attorney in Hecker's indictment.  *Id.*  The above includes Plaintiffs as part of the Hecker organization.  The disputed allegations of wrongdoing aside, GMAC cannot ignore the legal significance of the above allegations by the government that monies paid by consumers at closing for taxes, title, license and payoffs are to be HELD IN TRUST and are, therefore, not subject to any security interests of GMAC.  The only legal basis in which GMAC could legitimately retain these monies is if its security interest extended to trust monies, which it does not as a matter of law.  By necessity, Plaintiffs are entitled to an accounting to determine the exact amounts still wrongfully retained by GMAC for both TTL and lien payoffs.

Plaintiffs are directly liable for the unpaid TTL and lien payoffs, and the inability

to remit these "paid in trust" monies (as a direct result of GMAC's wrongful conversion

of these monies) has exposed their owner to serious liability in the form of a criminal

indictment.

## LEGAL ARGUMENTS

I.   **DEFENDANT'S MOTION TO DISMISS BASED ON AN ALLEGED LACK OF STANDING TO CONFER SUBJECT JURSIDICTION FAILS AS A MATTER OF LAW.**

**A.  The Law.**

Plaintiffs allege in their complaint the existence of federal jurisdiction pursuant to

28 U.S.C. § 1332 based on diversity of citizenship between the parties coupled with the

fact  that the amount in controversy excess the sum of $75,000 exclusive of interest and

costs.  *See* Complaint at ¶ 5.   This is the very basis relied upon by GMAC when it

removed Plaintiffs' earlier action to federal court.  Thus, diversity of citizenship is not

disputed and the remaining issue is whether or not an actual controversy exists for

purposes of subject matter jurisdiction.

For jurisdiction to exist in this Court, Plaintiffs must comply with the standing

requirements of Article III.  To establish the necessary standing, Plaintiffs must "present

an injury that is concrete, particularized, and actual or imminent; fairly traceable to the

defendant's challenged behavior; and likely to be redressed by a favorable ruling."  Davis

v. Federal Election Comm'n, 128 S.Ct. 2759, 2768 (2008) *quoting* Lujan v. Defenders of

Wildlife, et al., 504 U.S. 555, 560-561, 112 S.Ct. 2130, ____ (1992)  (environmental

groups brought action against the Secretary of the Interior challenging the manner of

regulation rather than asserting their own recognized claims to assert standing).

To establish standing, a complaint need not make a large number of allegations relating to injury or harm suffered.  "General factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing.  *Id*. at 561.  The issue of standing generally speaking does not depend upon the merits of the case.  *See e.g.,* Orr v. Orr, 440 U.S. 268, 278 (1979).

In Horne v. Flores, 129 S.Ct. 2579 (2009), the Court applied the same standard set forth in Davis*, supra,* and concluded standing existed for a superintendent who had a personal stake in the outcome of the action and who sought relief from judgments against him in connection with an action brought against the State under the Equal Educational Opportunities Act.  Standing was found even though the superintendent answered to the State Board of Education.

"The economic harm to a party with a possessory interest in seized property, imposed by virtue of is liability to the owner of such property,  can constitute a palpable injury sufficient to confer standing under Article III."  Via Mat International, SA, Ltd. v. United States, 446 F.3d 1258, 1263 (11th Cir. 2006).   In Via Mat Int'l,  an air carrier filed a complaint against the United States when its customs agents seized property belonging to a third party, Lespan, for whom the carrier was transporting the property.

The Court in Via Mat, *supra* opined:

> At the heart of Article III standing is the existence of an injury, not ownership. Ownership of property that has been sized can be evidence of the existence of an injury that is direct enough to confer standing, but ownership is not required; non-owners, such as bailees or those with possessory interests, can also have injuries resulting from the seizure of property that are sufficient to establish standing. (emphasis added)

*Id*. at 1262.

The relevant analysis of the Court was as follows:

> Though Via Mat was not the owner of the monetary instruments, it had a possessory interest in the property when it was seized by the government. Via Mat then suffered a direct, substantial economic injury due to its liability to Lespan for any of the property the Government did not return to the owner. Via Mat's injury is real and direct, and is sufficient under Article III.

Id. at 1263.

A "possessory interest" is defined as, "the present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Black's Law Dictionary at 1284 (9th Ed. 2009). Plaintiffs had a possessory interest in the monies paid into trust by consumers for the payment of TTL and lien payoffs. This possessory right required Plaintiffs to make certain these entrusted monies were remitted to the State of Minnesota and various lien holders, NOT to allow GMAC to snatch it to pay a loan owed by Plaintiffs. Yet, this is exactly what GMAC did and now claims Plaintiffs have no direct injuries related to this wrongful conduct.

**B. Plaintiffs have standing to assert their claims in this Court.**

As stated above, Plaintiffs alleged injury-in-fact that was suffered by them that is a separate and distinct harm from the harm done to third parties. Contrary to GMAC's mischaracterization of Plaintiffs' complaint, Plaintiffs are pursing damages for direct injury and not primarily on behalf of third parties.

Plaintiffs without question have an ongoing direct legal obligation to make certain the "trust" monies that were provided by various consumers at the time of the closings that took place when GMAC was in total control of Plaintiffs' finances be remitted directly to the State of Minnesota and various lien holders. The penalties for failure to remit these monies as required by law subjects Plaintiffs and their owner to substantial monetary and criminal liability. Plaintiffs remain liable to these consumers whose rights

are being pursued by the government.  As a direct and proximate result of Plaintiffs'
inability to access the TTL and lien payoff monies entrusted by various consumers
wrongfully attached by GMAC, Plaintiffs have been directly and substantially injured.

      Defendant's cases on the issue of failure to assert an injury in fact are readily
distinguishable. Each case cited refers to individuals attempting to assert a claim on
behalf of a class of people, which is not the situation in the case at bar.   The case of
Medalie v. Bayer Corp., 5120 F.3d 828 (8th Cir. 2007), involved a unique set of facts in
which Richard Medalie ("Medalie") sought damages on behalf of the United States under
the Medicare Secondary Payor statute, and not on behalf of himself claiming injury to
himself.  Medalie claimed that he used a drug manufactured by Bayer known as Baycol,
suffered injuries, and that his incurred medical expenses were covered by Medicare.  This
approximate two page opinion provides limited analysis on the issue.

      In the case of Rasmussen et al. v. Untied States of America et al., 421 F.2d 776
(9th Cir. 1970), various individuals sued the government relating to the decision of the
Postmaster General to discontinue mail transportation services by railroad.   As a
procedural matter, the Postmaster General's exercise of discretion when it decided to
discontinue transporting mail by railroad was not reviewable by a federal court, thereby
making this case of limited, if any, value.  There was simply no recognized injury or
threat of injury to a legally recognized legal right.

      Moreover, Defendant's references to a "generalized grievance" as being
insufficient to confer standing in  United States v. Hays, 515 U.S., 737, 743 (1995) is
misplaced.  GMAC neglects to include the entire sentence from which it quotes, which is:
"…we have repeatedly refused to recognize a generalized grievance against allegedly

illegal governmental conduct as sufficient to confer federal judicial power."  Obviously,

Plaintiffs are not asserting general grievances of any sort, much less grievances against

the government's alleged illegal conduct.  Plaintiffs allegations of injury are very

specific, as set forth in detail in the complaint.

Defendant's case of <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83

(1998)  involved an environmental group bringing a cause of action against a business for

violations of a federal statute, Emergency Planning and Community Right-to- Know Act

of 1986, for an alleged failure to provide the requisite reporting.  The Court found that the

group failed to satisfy the redressability requirement for standing.  This aspect refers to

the "likelihood that the requested relief will redress the alleged injury."  *Id*. at 103.

In the pending action, Plaintiffs seek first an order for judgment against GMAC

for the entrusted monies at issue.  *See* Complaint at Prayer for Relief.  In the alternative,

Plaintiffs ask that the Court directly order GMAC to remit these funds to the proper third

parties as it was never legally entitled to take these monies in the first instance.

Plaintiffs will go through each cause of action and recap or summarize its

arguments with respect to the existence of standing, and therefore subject matter

jurisdiction.

**1)  Count I – Conversion / Misappropriation of Monies**.

As a preliminary matter, the monies in this lawsuit which were provided by

customers to Plaintiffs dealerships for the payment of TTL and lien payoffs were to be

treated as "trust" monies for the designated payment of these specific items.  *See* Halberg

Aff, at Ex. 1, ¶ 17.  The United States Attorney for the District of Minnesota declared in

Hecker's indictment that these monies "were intended by the customer to pay for sales

tax, title, and license fees….and that Plaintiffs were supposed to be "holding in trust and paying it promptly to the state." *Id.*

Plaintiffs' cause of action is very specific and properly identifies and sets forth the trust nature of these monies, as well as Plaintiffs' legal obligations to make certain these entrusted monies were properly remitted to the State of Minnesota and various lenders. *See* Complaint at ¶¶s 23 and 24. Plaintiffs demanded that these third party monies be either turned over to them for proper handling or remitted directly by GMAC since it was in sole possession and control of the monies. ¶ 25.

The remaining allegations accurately establish the chain of events: a) Plaintiffs entered into the attached agreements with GMAC; b) GMAC proceeded to take over exclusive control and possession of the third party monies collected from transactions for the payment of TTL and lien payoffs; c) when Plaintiffs learned that these monies were not being properly remitted by GMAC, they demanded these monies directly; d) when GMAC refused to provide the monies, they had no choice but to bring this action. Plaintiffs specifically allege that these trust amounts due and owing for TTL and lien payoffs be immediately remitted "on behalf of the Plaintiffs" who retain the legal obligation for their nonpayment.

The wrongful attachment of the TTL and lien payoff monies is further supported by the fact that as a matter of law GMAC could not legally treat as "collateral" third party monies entrusted for the payment of TTL and lien payoffs. Minnesota's codification of the Uniform Commercial Code provides in pertinent part:

336.9-203. **Attachment and enforceability of security interests;**

(b) Enforceability.  Except as otherwise provided in subsections (c) through (I) [which are not applicable], <u>a security interest is enforceable against the debtor and third parties with respect to the collateral **only if**</u>:

   *  *  *

  (2)  **the debtor has rights in the collateral** or the power to transfer rights in the collateral to the secured party.

Minn. Stat. § 336.9-203 (b) (emphasis added).

Plaintiffs did in fact allege in their complaint that in paragraph 21, "[d]espite repeated demands by  Plaintiffs that GMAC voluntarily turn back in their entirety those monies <u>that were never legally those of Plaintiffs for GMAC to attach or apply towards the outstanding debts of Plaintiffs,</u> GMAC continued to refuse to either provide additional monies or provide a meaningful detailed accounting."  *See* Complaint at ¶ 21. (emphasis added)

Plaintiffs' had possessory interests in the trust funds for the payment of TTL and lien payoffs, which they were required by law to collect and remit directly to the State of Minnesota and various lenders.  *See* <u>Via Mat</u>, *supra.*  Plaintiffs' inability to remit these monies was directly caused by GMAC's wrongful conversion of these trust monies to pay down its own commercial debt, despite lacking any legal authority or basis to do so. Plaintiffs were directly injured as a result and are in fact seeking an order for judgment or damages against GMAC, as expressly alleged in the complaint.

**2)  Count II – Violation of Minn. Stat. § 297B.10 / Breach of Contract.**

Plaintiffs' contractual agreements with GMAC covered ONLY "Collateral" of Plaintiffs, which could not as a matter of law include trust monies from consumers, which are at issue in lawsuit.  *See* Minn. Stat. § 336.9-203 (b)  Therefore, Plaintiffs have standing as named parties in the underlying loan documents that established the security interest in the first place to assert claims against GMAC.

Additionally, both the Forbearance Agreement and related Voluntary Surrender Agreement appended to the complaint, precluded GMAC from attaching monies derived from closings that were required by law to be forwarded to the State of Minnesota and lien holders.  GMAC's legal argument as to whether or not the statute was intended to establish a private cause of action belies the fact that GMAC together with Plaintiffs had the concurrent legal obligation to remit entrusted monies collected for TTL and lien payoffs promptly to the State of Minnesota and various lien holders.  Since this did not take place as Plaintiffs fully intended and reasonably assumed GMAC would properly do, this lawsuit is necessary.

Again, injury in fact is expressly pled in paragraph 38 of this Count.  See Complaint at  ¶ 38.  Plaintiffs have in fact been damaged and continue to be damaged by GMAC's wrongful conduct.  But for GMAC's refusal and failure to honor consumer's intended treatment of trust monies, GMAC proximately and directly exposed Plaintiffs and their owners, as the dealerships involved in the various transactions, to direct and substantial liability.  These facts are undisputed.  Plaintiffs have a direct personal stake and interest in making certain that GMAC properly accounts for and releases these entrusted monies and that Plaintiffs be in a financial position to remit these monies as required by law.   Plaintiffs are NOT "asking the court to define the rights of others" as argued on page 12 of GMAC's memorandum.  The "others" have the undeniable legal right to the government's treatment of the subject monies as trust monies.  There is nothing further that needs to be decided as it relates to "others."

3)  **Count III – Lender Control Liability.**

Plaintiffs properly allege and assert that GMAC improperly retains possession and control of trust funds collected at the time customers purchased vehicles at Plaintiffs' business locations.  But for GMAC's exclusive control over these monies, Plaintiffs would have been able to directly remit these trust monies, as required by law.   This count is "in the alternative and in addition to other remedies."  *See* Complaint at ¶ 43.  As a creditor in possession retaining exclusive control over transactions and the related paperwork, GMAC should be held directly accountable for its unlawful conduct in its business dealings with Plaintiffs.  *See generally*, Mannino, E., Lender Liability and Banking Litigation, Ch. 6 (2009) *citing Restatement (Second) of Agency* § 14 O.

Moreover, GMAC's argument that Hecker has no standing in this action and is not presently named ignores entirely the fact that Hecker provided his personal guaranty for the commercial debt owed to GMAC by Plaintiffs.  See Complaint, Ex. A,  II. C. Further, as set forth in the criminal indictment, the government is alleging liability to Hecker for the nonpayment of TTL and lien payoffs by Plaintiffs.  Thus, it remains undisputed that Plaintiffs were damaged and continue to be damaged as a direct and proximate result of GMAC's wrongful exercise of control over Plaintiffs' day to day business closings.

4)  **Breach of Fiduciary Duties.**

As more extensively argued below, the law in Minnesota recognizes a fiduciary duty when the evidence indicates that the lender knew or ought to have known that Plaintiffs were placing their trust and confidence in the lender and depended upon the

lender to look out for their interests.  H Enterprises International, Inc. v. General Electric Capital Corp., 833 F.Supp. 1405, 1422 (D. Minn. 1993) (citations omitted).

In the case at bar, as specifically pled in the complaint, Plaintiffs voluntarily surrendered control over their business operations and finances to GMAC reasonably expecting that GMAC would not act in an unlawful manner with respect to trust funds from consumers for the payment of TTL and lien payoffs.  By violating the agreements between the parties and the law relating to the treatment of third party trust monies for the specific purpose of payment of TTL and lien payoffs - - GMAC's conduct directly and proximately damaged Plaintiffs.  Plaintiffs as the party to these agreements have standing to pursue GMAC for the damages it directly caused Plaintiffs.

The damages at issue to Plaintiffs are the inability to pay the related TTL and lien payoffs on those vehicle transactions that took place while GMAC was in sole possession and control of Plaintiffs' business operations and day to day finances.  It is undisputed that Plaintiffs' legal obligation to remit these trust monies remains to this day.  As GMAC is fully aware, it took all monies from Plaintiffs' business operations thereby leaving it without any financial means to remit these wrongfully attached trust monies.

For purposes of the pending motion, the allegations contained in Count IV must be accepted as true, as well as the reasonable inferences derived therefrom.  Morton v. Becker, 793 F.2d 185, 108 (8th Cir. 1986).  In particular, Plaintiffs allege in paragraph 45 (d) that "Plaintiffs reasonably relied upon GMAC to properly handle monies obtained from automobile sales that belonged to either the State of Minnesota or third parties." See Complaint at ¶45(d).  Also, Plaintiffs allege, "Plaintiffs reasonably relied upon GMAC's superior experience and knowledge in the proper handling of sales proceeds

when controlling and operating a dealership pursuant to its own agreements." *Id.* at

¶45(e).  Both of these allegations relate directly to the fact that GMAC was at all times

fully aware of the trust nature of monies provided by consumers at each transaction it

controlled, yet glommed on to these monies instead of providing them to Plaintiffs to pay

directly the State of Minnesota and lien holders.

Additionally, by refusing to provide the repeatedly demanded accounting, GMAC

made it difficult for Plaintiffs to determine what amounts remain due and owing for TTL

and lien payoffs, which is a further breach of fiduciary duties by GMAC.

### 5) Count V – Constructive Trust.

Application of Minnesota law holds as follows:

> We have held that a constructive trust may be imposed where the plaintiff shows
> "the existence of a fiduciary relation and the abuse by defendant of confidence
> and trust bestowed under it to plaintiff's harm."  It is clear, however, that a
> fiduciary relationship in a strict sense is not a prerequisite, and any relationship
> giving rise to justifiable reliance or confidence is sufficient.

Dietz v. Dietz, 244 Minn. 330, 334, 70 N.W.2d 281, 285 (1955) *reh'g denied*.   A court

may impose a constructive trust when it is necessary to prevent unjust enrichment and in

those circumstances where a legal title to personal property is obtained through fraud,

duress, undue influence or other improper means, or by taking improper advantage of a

fiduciary relationship.  *See e.g.,* In Re Erikson, 337 N.W.2d 671, 674 (Minn. 1983)

(creation of construction trust was required to prevent unjust enrichment).

In the present case, GMAC should be able to readily trace exactly what happened

to those trust funds provided by consumers who purchased cars from Plaintiffs when

GMAC was in exclusive possession and control of all financial transactions and proceeds

from the sales.  These trust funds were never monies properly subject to GMAC's

security interest and, therefore, represent monies that GMAC wrongfully snatched and continues to possess.  Instead, Plaintiffs represent the proper parties that should immediately obtain possession of these trust monies and be in a position to fulfill their legal obligation owing to their customers.

As set forth above, Plaintiffs have suffered injury that is legally recognized. Injury is in fact alleged in the complaint under this Count.  See Complaint at ¶ 51. Plaintiffs had a possessory interest in the monies paid into trust by consumers for the payment of TTL and lien payoffs.  This possessory right required Plaintiffs to make certain these entrusted monies were remitted to the State of Minnesota and various lien holders, NOT to allow GMAC to put trust funds in its own pocket.

Plaintiffs as the vehicles or instrumentality for GMAC to obtain third party trust monies for which Plaintiffs are legally liable to properly handle, clearly have standing to challenge this wrongful conduct.  Unless and until GMAC releases these monies back to Plaintiffs, the serious consequences running from the nonpayment will adversely impact Plaintiffs and its owner.  These very facts amply support imposing a constructive trust making certain they maintain their segregated intended character, as required by law.

**6) Unjust Enrichment.**

Defendant is factually and legally wrong when it argues, "Plaintiffs have no standing to assert a claim for unjust enrichment because they have not been deprived of any funds they would otherwise be entitled to receive."  *See* Defendant's memorandum at pg. 15.   As established by Minnesota Statute, automobile dealerships are entrusted with the collection and remittance of monies collected from purchasers at the time of purchase for TTL and lien payoffs.  As the entrusted recipient of these designated monies,

26

Plaintiffs are not free to just spend the monies as they like OR to allow their lender to attach them and apply them towards their own debts. *See supra*.

Plaintiffs have been directly damaged by GMAC's inequitable conduct. As amply established herein, GMAC has no legal entitlement to continue to retain trust funds that Plaintiffs are required by law to remit to the State of Minnesota and various lien holders on behalf of its customers. To allow GMAC to avoid its legal obligations would reward it for the theft of trust funds for which Plaintiffs remain directly and primarily liable for remitting.

### 7) Count VII – Demand for Accounting.

Plaintiffs will address more fully its legal entitlement to assert a claim for an accounting. Contrary to GMAC's mischaracterization of Plaintiff's Count VII, Plaintiffs are in fact demanding for their own benefit the following financial information: a) a complete and detailed accounting of the treatment of monies collected, b) how they were applied, c) dates of application, d) interest rates and charges to Plaintiffs, e) the treatment of General Motors payments including incentives and "wind down" agreement proceeds that total in the millions of dollars; and f) other information necessary for Plaintiffs to determine exactly what transpired in their businesses. *See* Complaint at ¶ 57.

The above information is in addition to what transpired exactly with the consumer transactions for which Plaintiffs remain liable for the payment of TTL and lien payoffs when GMAC was in sole possession and control of Plaintiffs' business and finances.

GMAC cannot merely ignore the majority of Plaintiffs' pleading and argue that Plaintiffs are not entitled to know exactly what transpired and how GMAC handled monies it directly obtained without disclosure to Plaintiffs. It is obvious that GMAC

collected substantial monies and refuses to fully account for, which makes no business or

legal sense whatsoever.

**II.    DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM FAILS AS A MATTER OF LAW.**

The Supreme Court in reversing the lower court's granting of a motion to dismiss

in <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984) opined:

> At this stage of the litigation, we must accept petitioner's allegations as true.  A
> court will may dismiss a complaint **only** if it is clear that no relief could be
> granted under any set of facts that could be proved consistent with the allegations.
> (emphasis added).

At issue in <u>Hishon</u>, *supra,* was a female attorney's claims under Title VII based

on her employment relationship with her law firm who had no female partners, as well as

an expectation or privilege of employment to be considered for a partnership.  The Court

reviewed the numerous allegations found in the complaint that supported Ms. Hishon's

position that the opportunity to become a partner was part and parcel of her status as an

associate at the firm.  *Id.* at 76.  The law firm's argument that Title VII categorically

exempts partnership decisions from scrutiny was not supported by the legislative history

for Title VII, and there was no legal authority cited for this position.  *Id.* at 77.   The

Court held that Ms. Hishon's complaint stated a claim cognizable under Title VII, and

"therefore she is entitled to her day in court to prove her allegations."  Id. at 78-79.

GMAC misstates the law by citing to the case of <u>Ashcroft v. Iqbal, et al</u>., 129

S.Ct. 1937 (2009) for the general proposition that the standard applied for deciding a

motion to dismiss for failure to state a claim has been altered.  *See* Defendant's

memorandum at pp. 6-7.   Defendant argues that Plaintiffs are not allowed to rely on

conclusory allegations, which Plaintiffs do NOT rely upon in opposing Defendant's motions.

The case of <u>Aschcroft</u>, *supra,* involved a Muslim Pakistani pretrial detainee who brought an action against a number of government officials asserting constitutional claims arising from his confinement.   Of significance, this Supreme Court decision had four separate dissenters:  Justices Souter, Stevens, Ginsburg and Breyer who filed dissenting opinions.  In this rather complicated case that is factually dissimilar, the following standard was applied:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*. at 1948 (citations omitted)    Unfortunately for Mr. Iqbal, he failed to plead facts sufficient to state a claim for purposeful and unlawful discrimination, which is not the situation for the Plaintiffs in this pending case.  The legal standard has not changed and remains as stated above.

Again, this is NOT a situation in which Plaintiffs are asserting any sort of ownership interest (which is not required for standing) in the trust funds at issue. Plaintiffs have a reasonable expectation that the Court will review the agreements and facts involved in this action and come to the inescapable conclusion that GMAC had no legal ability whatsoever to attach trust monies intended for remittance to for the payment of TTL and lien payoffs.  Moreover, GMAC did not receive any sort of judgment "on the merits" as it relates to the liquidation of collateral.  GMAC's judgment was obtained

through a default situation; therefore, this red herring argument has no relevance to GMAC's conduct of attaching property not subject to its security interests.

GMAC ironically argues on page 17 of its memorandum that Plaintiffs fail to set forth any detail as to the transactions at issue, the identity of persons and exact amounts at issue - - which is exactly the information that Plaintiffs have been seeking from GMAC for nearly the past year!

As set forth herein, Plaintiffs have set forth a prima facie case for each and every count in their Complaint.

**1) Count I – Conversion / Misappropriation of Monies**.

To establish conversion, Plaintiffs are required to show the following:   a)  there is an exercise of dominion over the personal property, which is inconsistent with and in repudiation of the owner' right to the personal property; or b) some act done which destroys or changes the character of the personal property or deprives the owner of possession permanently or for an indefinite period of time.  *See generally* Inland Construction Corp. v. Continental Casualty Co., 258  N.W.2d 881 (1977); *See Also Restatement (Second) Torts* § 222A ("conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.")

Plaintiffs' were the intended entrusted party of the third party funds provided at the closings that took place at Plaintiffs' dealership locations during the relevant time period that GMAC exercised total control and dominion over Plaintiffs' day to day finances and transactions.  Plaintiffs' rights to control or obtain these trust monies was directly contingent upon their concurrent legal obligation to in turn remit them directly

for the payment of TTL and lien payoffs.  GMAC intentionally deprived Plaintiffs of

these monies for purposes of their subsequent remittance by wrongfully treating them as

collateral that GMAC could apply towards its own debt.  The fact that GMAC

commingled these funds does not change their original character – they are legally to be

treated as trust monies.  *See* Skolnick Aff. at Ex. K, ¶ 17.

In summary, Defendant GMAC wrongfully converted to its own use and benefit

those third party trust monies provided by customers to Plaintiffs for the payment of

related TTL and lien payoffs on the vehicle transactions.  Plaintiffs possessory interest

and resultant direct liability to others for Defendant's wrongful conduct provides

sufficient standing for Plaintiffs to assert their claim as found in Count I.  Plaintiffs have

established a prima facie case that the monies at issue belonged to them in their trust

capacity and NOT GMAC.  That GMAC wrongfully took these trust funds.  That as a

direct and proximate result of GMAC's wrongful conversion of these funds, Plaintiffs

have been directly injured and harmed.

Plaintiffs incorporate by reference their legal argument set forth above wherein

the Uniform Commercial Code does not recognize a security interest in property not

belonging to the debtor.  Minn. Stat. § 336.9-203 (b)

### 2)  Count II – Violation of Minn. Stat. § 297B.10 / Breach of Contract.

The basic elements for a breach of contract claim include the following:  a) the

existence of a contract;  b)  the performance by the plaintiff of any conditions precedent;

c) the material breach of the contract by the defendant; and d) damages.  Russo v. NCS

Pearson, Inc. 462 F.Supp.2d 981, 989 (D.  Minn. 2006).

The specific contracts a issue in this lawsuit include the Forbearance Agreement the Voluntary Surrender Agreement, which incorporate by reference the underlying loan documents establishing the security interest in Plaintiffs' assets, or collateral. *See* Complaint at Exs. A and B.   As specifically alleged in Court II, the "collateral" to which GMAC's security interest attached ONLY involved Plaintiffs' property and not trust or trust-like property provided by customers of Plaintiffs. *See* Minn. Stat. § 336.9-203 (b). Plaintiffs did what they were required to do with respect to these underlying agreements, thereby entitling them to pursue GMAC for its breaches. Plaintiffs do not need to rely upon a private cause of action under the relevant statute.

In particular, the following contractual provision was directly breached when GMAC attached the trust funds and failed to recognize that as a matter of law, Plaintiffs had a distinct legal obligation to otherwise handle these very monies:

> GMAC will apply the proceeds of the disposition and sale of the Collateral to the payment of the Indebtedness, and any other sums due or to become due under the Loan Documents, including attorneys' fees and expenses incurred in retaking possession of, transporting, storing, preparing for sale, and disposing of and selling the Collateral, in such order and manner as GMAC determines in its sole discretion, <u>unless otherwise directed by law</u>. [emphasis added]

*See* Complaint at Ex. C; *See Also* Complaint  at ¶¶ 9, and 33-38.

The specific statutory provision at issue provides in pertinent part: :

> (b) Any person who collects the tax imposed under this chapter (sales tax on motor vehicles) from a purchaser and willfully fails to remit the tax is guilty of a felony.

Minn. Stat. § 297B.10 (b).   Thus, it is undisputed that Plaintiffs at all times had a legal obligation to remit the sales taxes paid in trust by customers at the time of purchase directly to the State of Minnesota.  By GMAC's refusal to allow Plaintiffs to remit these

monies directly, Plaintiffs have now become directly liable. This harm is particular, concrete and actual to Plaintiffs.

Accordingly, Plaintiffs have set forth a prima facie case of a breach of contract by GMAC for which it is directly liable to Plaintiffs for damages.

### 3) Count III - Lender Control Liability.

Defendant's argument on this claim relies entirely upon a purported lack of standing. Therefore, Plaintiffs incorporate by reference their prior arguments on this Count. Defendant claims that" no where in the complaint and certainly not in Count III do Plaintiffs allege GMAC is obligated to release funds to Plaintiffs." *See* Defendant's memorandum at pg. 21. This statement is false. *See* Complaint of Record at pg. 2 (Introduction, last paragraph); ¶¶s 21, 25, 28, and Prayer for Relief, no. 1.

Plaintiffs' position remains that the liability for the payment of unpaid TTL and lien payoffs remains that of the dealerships and was to be paid with trust monies provided by customers at the time of the transactions involving GMAC as the sole recipient of closing proceeds. Plaintiffs asserts its entitlement to obtain these funds directly OR to have GMAC ordered to directly turn over these monies. Plaintiffs' position is in the alternative that GMAC directly pay over these monies.

Regardless of who accounts for the proper remittance of trust monies, the fact remains – GMAC is NOT the rightful owner or entitled to retain the trust monies provided by consumers. Only through GMAC's exercise of dominion and control over Plaintiffs' business operations and finances did GMAC come to be in a position to abuse its power and wrongfully obtain trust funds.

### 4) Count IV - Breach of Fiduciary Duties.

The existence of a fiduciary relationship is generally a question of fact to be decided by the finder of fact. _Minnesota Timber Products Assoc. v. Am. Mutual Ins. Co._, 766 F.2d 1261, 1268 (8th Cir. 1985). This is NOT, "…an ordinary case of a secured creditor enforcing its lien rights against the assets of its debtors." _See_ Defendant's memorandum at p. 23. In this case, the lender took possession and control of Plaintiffs' business operations, directly taking any and all monies from transactions without regard to their trust nature, and then claiming it has acted properly as a secured creditor in attaching trust funds!

In addition to the legal authority set forth above for purpose of asserting a claim for the existence of fiduciary relationship, there exists legal authority holding that once a lender declares its loan to be in default and commences foreclosure or liquidation of its collateral, the lender becomes a fiduciary with respect to how the collateral is liquidated and the proceeds of the sale applied. _See e.g.,_ _Solfanelli v. Corestates Bank, NA_, 203 F.3d 197, 200 (3d Cir. 2000) ( holding that under state law (PA) the creditor acts as debtor's fiduciary and has corresponding good faith duty to maximize proceeds).

Plaintiffs have established a prima facie case where a lender such as GMAC is not acting as an ordinary lender, but instead a lender taking over entire control and dominion over its borrower's assets and finances, thereby creating a fiduciary relationship.

**5) Count V – Constructive Trust.**

As set forth above, a court may impose a constructive trust when it is necessary to prevent unjust enrichment and in certain circumstances involving undue influence, fraud or duress or when taking advantage of a fiduciary relationship. _See e.g.,_ _In Re Erikson_,

337 N.W.2d 671, 674 (Minn. 1983) (creation of construction trust was required to prevent unjust enrichment).

Plaintiffs have a legal right to pursue the establishment of a constructive trust consisting of those specific monies collected and converted by GMAC from the vehicle transactions that took place at Plaintiffs' dealership locations wherein trust monies were provided by customers for the payment of TTL and lien payoffs.  These funds can be readily traced whether or not GMAC misapplied them toward the debt owing of Plaintiffs.  As set forth below, it would be inequitable and unjust for GMAC to financially benefit from its wrongdoing.

### 6) Count VI - Unjust Enrichment.

In order to establish a claim for unjust enrichment, Plaintiffs must show that another party knowingly received something of value to which he was not titled and that the circumstances are such that it would be unjust for that person to retain the benefit. *See. e.g.* Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn.Ct.App. 2001)  The doctrine has been extended to situations in which it would be morally wrong for the party to retain the benefit.  *Id*. (citations omitted)*.*

GMAC has no legal ability to take trust funds and attach them or otherwise retain them.  Again, Plaintiffs have been directly damaged and harmed and to allow GMAC to retain ill-begotten monies is inequitable.

### 7)  Count VII – Demand for Accounting.

As a preliminary matter, Defendant GMAC is throwing up technical legal arguments that do not apply to a situation in which a lender wrongfully and knowingly takes monies it is not entitled to take and applies them towards its loan.  In this particular

case, at issue are trust funds that must be accounted for and for which Defendant GMAC

has outright refused to provide any accountability.  The accounting is necessary for

Plaintiffs to reconstruct what exactly happened to the entrusted monies.  Moreover, as a

creditor in possession GMAC cannot ignore or avoid its legal duties owing to a debtor

when it takes disposition actions against collateral.

The Minnesota Uniform Commercial Code contains specific provisions that

entitle Plaintiffs, as debtors, to demand from GMAC as the secured party, to an

accounting, list of collateral and statement of account.  .

> **Duty to respond to requests.**  Subject to subsections (c ), (d), (e), and (f), <u>a
> secured party</u>, other than a buyer of accounts, chattel paper, payment intangibles,
> or promissory notes or a consignor, **shall comply** <u>with a request within 14 days
> after receipt</u>.(emphasis added)

 Minn. Stat. § 336.9-210 (entitled in part "Request for Accounting").  .Moreover, the

secured party is restricted in how it handles the application of the proceeds from the

disposition of collateral and is required to account for any surpluses or deficiencies of any

secured obligations.  Minn. Stat. § 336.9-615.  This has never been done by Defendant

GMAC.

The statute contains an express provision that does not allow a secured party to

impose a waiver of these rights of Plaintiffs.  *See* Minn. Stat. § 336.9-602 (2).

Accordingly, in the event GMAC argues that its own documents do not require an

accounting, the applicable statute invalidates and makes unenforceable this type of

contract term.

The following provides Plaintiffs with remedies for GMAC's failure to comply

with the statute:

a. <u>Judicial orders concerning noncompliance</u>.  If it is established that a secured creditor is not proceeding in according with this article [Article 9], <u>a court may order</u> or restrain collection, enforcement, or <u>disposition of collateral on appropriate terms and conditions</u>.

b. <u>Damages for noncompliance losses</u>.  Subject to subsections (c), (d), and (f) <u>a person is liable for damages in the amount of any loss caused by a failure to comply with this article</u>. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.

       *       *       *

(f) <u>Statutory damages:  noncompliance with section 336.9-210</u>.  A debtor or consumer obligator <u>may recover damages under subsection (b) and, in addition, $500 in each case for a person that, without reasonable cause fails to comply with a request under section 336.9-210</u>.

Minn. Stat. § 336.9-625. (emphasis added)

Accordingly, Plaintiffs are entitled to proceed to request that this Court order an accounting and that Defendant GMAC be liable for its noncompliance with Article 9 of the Minnesota Statutes.

## CONCLUSION

Based on the foregoing, Defendant GMAC's motions for dismissal based on lack of subject matter jurisdiction and failure to state a claim both fail as a matter of law. Plaintiffs are entitled to proceed with their lawsuit since they have been directly injured by GMAC's wrongful conduct, as alleged more specifically in the complaint.  GMAC's attempt to avoid a trial on the merits fails since Plaintiffs are able to set forth a prima facie case in support of each cause of action against GMAC.

GMAC directly and substantially injured Plaintiffs by wrongfully attaching trust funds that were never intended to be part of any security arrangement, and which cannot as a matter of law ever be attached by a creditor.  Plaintiffs are now faced with the direct consequences for their inability to remit these trust monies to the State and various lien

holders, as it is required to do under law.  GMAC directly and materially breached its agreements with Plaintiffs, violated its fiduciary duties owing to Plaintiffs as a creditor in possession and control of the vehicle transactions at issue from which these trust monies arise, and unjustly enriched itself at the expense of Plaintiffs and others.

GMAC must be held accountable for preferring itself over Plaintiffs, Plaintiffs' customers, the State of Minnesota and various lien holders.  GMAC knew or should have known it never had any legal basis in which to convert and misapply trust funds towards its outstanding loans with Plaintiffs.

Respectfully Submitted,

Dated:  March10, 2010                    **SKOLNICK & SHIFF, P.A.**

/e/ William r. Skolnick_____
William R. Skolnick  #137182
LuAnn M. Petricka  #18505X
2100 Rand Tower
527 Marquette Avenue
Minneapolis, MN 55402
Phone (612) 677-7600
Fax (612) 667-7601
wskolnick@skolnick-shiff.com
petricka@visi.com

**ATTORNEYS FOR PLAINTIFFS**

38