# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
### FOURTH DIVISION

|  |  |  |
|---|---|---|
| Denny Hecker's Cadillac – Pontiac – GMC, Inc.,  Walden Fleet Group, Inc., and Southview Chevrolet, Co., | ) ) ) ) ) | Court File:<u>0:10-cv-00068-JRT-RLE</u> |
| *Plaintiffs*, | ) ) | **DEFENDANT'S REPLY MEMORANDUM** |
| -vs- | ) ) |  |
| GMAC Inc., formerly doing business as GMAC, LLC, | ) ) ) | |
| *Defendant*. | ) | |

TO:   Plaintiffs above-named and their attorneys: William R. Skolnick and LuAnn M. Petricka, 2100 Rand Tower, 527 Marquette Avenue, Minneapolis, MN 55402.

## INTRODUCTION

Defendant GMAC, Inc. ("GMAC") filed a motion to dismiss Plaintiffs' Complaint pursuant to rule 12(b)(1) for lack of subject matter jurisdiction and rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Plaintiffs' memorandum in opposition to the motion presents by affidavit new and misleading factual information not contained in their Complaint.  None of these "facts" is properly before the Court.  In point of fact, however, they change nothing.  Neither these "facts" nor the legal arguments in Plaintiffs' memorandum address the fatal defects of their Complaint.  The Complaint should be dismissed in its entirety.

**12(b)(1) SUBJECT MATTER JURISDICTION**

Plaintiffs' Complaint fails to assert an injury in fact.  Plaintiffs allege only that GMAC has possession of funds that Plaintiffs admit they have no right to recover.  Plaintiffs allege the funds at issue belong to the State of Minnesota (for taxes, titles, and license fees) or to other unidentified third parties (for lien payoffs or warranty sales).  In fact, Plaintiffs do not allege that they are entitled to a single dollar from GMAC. They repeatedly admit they are not.

TAXES TITLES AND LICENSE FEES ("TTL").  Plaintiffs' Complaint alleges that there are current outstanding tax, title and license fees owing to the State of Minnesota arising out of sales of vehicles from two of the three Plaintiff dealerships.  (Complaint, para 29)  They do not – because they cannot – base their claim of standing on a claim that GMAC owes the funds to the Plaintiffs.  They admit that they have no claim to the funds.  (Complaint, para 21, 27, and 28.)  They admit that they bring their claim "on behalf of others".  (Complaint, para 21, 25, 31, 43, 54, prayer for relief # 2, 3, and 4.)

Their only claim to standing rests on the civil and criminal liability they allege they may face for their own failure to pay the above fees to the State. (Plaintiffs' Opposition Memorandum at Pg s 11-13, 17).  Plaintiffs' claim fails under its own weight.  Plaintiffs fail to cite a single case for the proposition that a party has standing in the federal court in a Complaint against a party on the basis

of its own potential civil and criminal liability for its own conduct toward non-parties. [1]

      <u>LIENHOLDERS / WARRANTY CLAIMS</u>.   Plaintiffs have not alleged an injury in fact as to either lienholder payments or warranty sale proceeds.   The Complaint fails to allege a single lawsuit, much less judgment, against either GMAC or Plaintiffs from the State of Minnesota, or any unidentified car buyer, lender, or other potential claimant.[2]   Plaintiffs fail to cite a single case where the mere potential of a future claim, whether civil or criminal, is an injury in fact sufficient to confer standing.

---

1.  As discussed further below, Plaintiffs' desperate effort to put facts improperly before the Court cannot save their Complaint.  However, in the interest of candor to the tribunal, and without departing from the current procedural posture of the motion to dismiss, GMAC notes the following: Plaintiffs took care in their Complaint *not* to allege that if only GMAC would have paid Plaintiffs certain sums, Plaintiffs would have made good on their obligations to pay tax, title and license fees to the State.  Plaintiffs were careful not to make that allegation because Plaintiffs and their counsel are well aware that GMAC did, in fact, disburse funds to Plaintiffs for the express purpose that Plaintiffs would pay those fees to the State.  Plaintiffs have long since cashed those GMAC checks but, to GMAC's knowledge and according to their Complaint, they still have not made those payments to the State.  This footnote is necessary in light of the attempt of Plaintiffs to put "facts" before the Court, outside the four corners of their Complaint, all of which imply in a misleading way that but for GMAC's failure to disburse TTL funds to Plaintiffs the Plaintiffs would not face criminal liability therefor.  See Second Affidavit of Michael Haag, Exhibits 1, 2 and 3.

2.  Plaintiffs submit and rely on the affidavit of Marsh J. Halberg, for the proposition that they have standing because they are "included in the 'Hecker Entities' referenced in the criminal indictment" against Dennis Hecker.  For purposes of this motion, it is important to note that no Plaintiff has been indicted and that Mr. Hecker, who has been indicted, is not a party to this action.  Further the Halberg affidavit is rank hearsay, not premised on his personal knowledge.  Instead, the affidavit offers only Mr. Halberg's "understanding" of the focus of the investigation and the involved parties based on various conversations.  Finally, of course, the affidavit is improperly before the Court.

Further manifesting Plaintiffs' lack of standing are the unavoidable and unworkable consequences of litigating this case notwithstanding the repeated allegations in their Complaint that the funds at issue belong to non-parties. (Complaint, para 29, 30, 37). Plaintiffs' Complaint alleges (without reference to any statute or contract) that GMAC is "directly liable" to these non-parties. (*e.g*, Complaint, Par. 30). Plaintiffs' unfounded effort to put itself in the place of such non-parties in making claims on their behalf would create all sorts of problems Plaintiffs simply fail to address. By way of example only:

(a) would this Court's resolution of the alleged potential claims of these non-parties be res judicata as to them and their alleged damages?

(b) to whom would defendant make out a check (checks?) in satisfaction of a judgment in favor of these unidentified parties on these pleadings?

(c) how should GMAC prosecute the particular defenses and counterclaims it may have against particular non-parties based on the particulars of the respective transactions, and how would each of these non-parties respond to such defenses and counterclaims in absentia?

## 12(b)(6) FAILURE TO STATE A CLAIM.

Each count of Plaintiffs' Complaint fails to state a claim upon which relief can be granted because the Plaintiffs claims all relate to funds allegedly belonging to non parties. The Complaint alleges only hypothetical, abstract, and over-

generalized damages to the Plaintiffs.  Plaintiffs' Complaint rests entirely on its

allegations that GMAC owes money to the State and to unidentified non-parties

arising out of particular retail car purchases at Plaintiff dealerships.  But Plaintiffs

simply fail to allege even the most fundamental particulars, including the

identification of the parties to these purchases and the contracts or contract terms

allegedly governing any of them.  Plaintiffs do not, for example, allege that GMAC

was party to any of these transactions.

Plaintiffs' Complaint fails to describe the nature and substance of any

particular transaction, to identify the individual(s) or organizations that

theoretically may have the right to any funds voluntarily paid to GMAC, or set out

a single example of funds wrongfully held by GMAC.  Most importantly, of

course, Plaintiffs do not allege that a single dollar allegedly held by GMAC

actually belongs to Plaintiffs.

TAXES, TITLES AND LICENSE FEES:  As to the TTL, the Complaint

fails to allege a single fact establishing GMAC wrongfully withheld money

belonging to the State, much less the Plaintiffs themselves.[3]  The Complaint fails to

identify a single transaction at a plaintiff dealership during the time period in

---

3.  GMAC acknowledges that Plaintiffs offer conclusory statements to this effect in their
Complaint, but such statements, without allegations of specific underlying facts are insufficient
under *Iqbal, supra.*

question resulting in non-payment of TTL, let alone possession of those funds by GMAC.

LIENHOLDERS / WARRANTY CLAIMS.  Plaintiffs continue on their path of conclusory and nonspecific allegations that GMAC withheld money belonging to third party lien holders.  These general averments made by Plaintiffs are insufficient for the Complaint to survive even the threshold level of scrutiny required at this stage of the litigation.  Plaintiffs do not identify a single customer or lienholder who claims to have not received a lien payoff from either Plaintiffs or GMAC.  Even if such a customer or lienholder exists, Plaintiffs offer no factual or legal support for their contention that GMAC is obligated to reimburse such non-party from proceeds that GMAC received from Plaintiffs on the sale of GMAC's collateral.  In short, Plaintiffs have failed to state claims upon which relief may be granted.

## DISCUSSION

**I.     The law on standing and on Rule 12(b)(6) (failure to state a claim) is clear; Plaintiffs must have an injury in fact.  Plaintiffs' failure to allege that they have sustained actual and direct damages is fatal to their Complaint.**

Plaintiffs present no case or controversy as to any injury / damage they sustained at the hands of GMAC.  Plaintiffs' Complaint does not offer any set of facts showing that GMAC's conduct of applying payments voluntarily made by Plaintiffs to GMAC to reduce the balance of Plaintiffs debts was in any way

wrongful.  Nor does the Complaint show a causal link between GMAC's application of those payments and any damage sustained by Plaintiffs.  Without identifying specific facts to establish this connection, Plaintiffs cannot meet the Article III standing requirement for this court to have subject matter jurisdiction.

### a. The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims.

Federal courts have jurisdiction only over actual cases and controversies. U.S. Const. art. III, § 2, cl. 1.  The only theoretical injury Plaintiffs identify is the potential penalty for their own failure to remit third party monies for TTL to the State and other funds to lien holders / warranty providers.  Plaintiffs admit they had a direct legal obligation to remit those monies, but failed to do so.  Even if GMAC were holding such funds, those funds would belong to non-parties - persons or organizations that are not identified in the Complaint.

The basic inquiry for purposes of standing is whether the "conflicting contentions of the parties…present a real, substantial controversy between parties having adverse legal interest, a dispute definite and concrete, not hypothetical or abstract."  *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S.Ct. 2301 (1979).  Abstract complaints are insufficient to bestow standing because they do not provide the requisite concrete, particularized type of injury-in-fact necessary for standing.  *Berry v. City of Little Rock*, 904 F.Supp. 940 (E.D.Ark. 1995).  At issue in *Berry* was a city ordinance that allegedly affected "some

undefined interest of [the plaintiffs] in an uncertain way." *Id.* The court rejected the plaintiff-tenants argument that they were injured-in-fact by the enactment and enforcement of the ordinance because the allegations were tenuous and nothing more than "bare assertions of injury." *Id.* The speculative possibility of an injury arising in the future is not sufficient to establish an injury-in-fact. *See Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir. 2000) (failure to cite to specific facts demonstrating concrete injury at the time the lawsuit was filed will not confer standing); *See O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669 (U.S. 1974) (allegations of future injury must be particular and concrete); *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925 (1974) ("in defining the nature of the injury, courts have stated flatly: 'abstract injury is not enough'"). Plaintiffs' alleged injury in the Complaint regarding the TTL is too abstract to be judicially cognizable because, not only do Plaintiffs rely upon the rights of others, but they proffer no actual instance or example of an individual who has made a claim or even threatened a claim against Plaintiffs for TTL. In their Opposing Memorandum, Plaintiffs assert some potential *exposure* to criminal liability, though they have not been indicted and, one would assume, they deny actual criminal responsibility -- and so do not allege they are presently or even likely to be subject to a conviction and criminal sanctions. (Opposition Memorandum at 11-13, 17).

Furthermore, Plaintiffs' contentions regarding liens and warranty payments are equally unavailing because they essentially assert only some undefined interest in an uncertain way – potential exposure to potential civil liability to unidentified non-parties to this lawsuit.  They do not allege they have been sued by any such non-parties much less that they are liable by way of judgment to any of them. [4]

GMAC has never had an obligation to make payment towards other liens with proceeds derived from the sale of GMAC's collateral.  Any obligation to a third-party lienholder for trade-in car loan payoff would be Plaintiffs car dealers' obligations and would derive from a contract between the Plaintiff car dealer and the car purchaser.  Plaintiff does not – and cannot – allege that GMAC was party to any of those contracts.

Plaintiffs rely heavily upon *Via Mat Intern. South America Ltd. v. U.S.,* 446 F.3d 1258 (11th Cir. 2006) in asserting for the first time in their Opposition Memorandum that they have a "possessory interest in funds."   A closer look at *Via Mat* reveals that standing there was based on the nature of the case – a forfeiture action by the government for funds it had seized from claimant.[5]   Here, the funds were not "seized"; they were paid voluntarily by Plaintiffs to GMAC to induce it to

_____

4.  The substantive allegations in the Complaint with respect to lien payoffs and warranty payments are in Count 1, paragraphs 22-31.

5.  The *Via Mat* court relied on United States v. $260,242.00 in U.S. Currency, 919 F.2d 686, 687-88 (11th Cir. 1990) for stating that "a possessory interest generally is constitutionally sufficient for claims in forfeiture actions".  (*Emphasis added*). 446 F.3d at 1262.

release its liens on vehicles Plaintiffs were selling or to otherwise satisfy their obligations under the lending documents.  Indeed, far from alleging a "possessory interest" in the funds at issue, Plaintiffs describe in their Complaint those TTL monies at issue as "those monies that were never legally those of Plaintiffs". (Complaint, para 21)

Further this is not a forfeiture case.  The instant case is more akin to cases which *Via Mat* cites which have also held that mere custodial possession, or a "naked claim of possession," do not pass the Article III standing analysis.  *See U.S. v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2nd Cit. 1999).   The courier in *Via Mat* suffered actual monetary loss because it had paid funds to a third party out of its own pocket.  *Via Mat*, 446 F.3d at 1262.  Thus, the courier's possessory interest was a concrete, particular, and direct loss to itself.  Here, Plaintiffs allege no such possessory interest.

In *Davis v. Federal Election Com'n*, 128 S.Ct. 2759 (Dist. Col. 2008), a case cited by Plaintiffs, the court found the plaintiff had standing to assert constitutional challenges because, as a result of a campaign finance statute which capped the amount of self-financing allowed, he faced prospective injury that was real, immediate, and direct.  Plaintiffs here are not challenging the validity of statute or any government action, but rather are seeking to escape liability for their own

willful violation of a statute and place the blame on GMAC who rightfully and justifiably exercised its rights as a secured lender.

Plaintiffs recognize the significance of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992), a case which holds that Plaintiffs must themselves have suffered injury in fact—they cannot simply assert the rights of others.  "The injury in fact test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured." *Lujan*, 504 U.S. at 563, 112 S.Ct. at 2137.  The court ultimately found the plaintiff lacked standing for failure to demonstrate any concrete injury to himself.  *Id.*  The *Lujan* court's reasoning explains precisely why the Plaintiffs here have no standing to assert claims which, when shorn of the vague factual allegations, identify no palpable injury to the Plaintiffs themselves based on conduct of GMAC.

Plaintiffs direct the court to *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102 (1979), but that case is unhelpful in resolving the legal issues here because it involves a plaintiff's constitutional challenge of an under-inclusive statute.  Likewise, the court's analysis in *Horne v. Flores*, 129 S.Ct. 2579 (2009) is also inapposite. There, the plaintiff-superintendant brought a lawsuit to seek specific relief from a previous declaratory judgment and injunction.  The court orders and judgments the superintendant was subject to were concrete, particularized, and actual injuries to

the superintendant, giving rise to standing. *Id.* at 2585.  Consequently, the Plaintiffs reliance on these cases for factual similarity is misplaced.

Plaintiffs do not seek relief to directly and tangibly benefit them.  The alleged third parties at large may or may not have rights against Plaintiffs to some unquantified funds based on contracts not included in the instant Complaint, but this fact alone cannot support jurisdiction.  It is pure conjecture whether the monies allegedly withheld by GMAC affect the Plaintiffs.  Without more, the Complaint only attempts to vindicate the alleged rights of others and, in accordance with the law on standing, the Plaintiffs cannot proceed.

### b.  The Plaintiffs Fail to State a Claim Upon Which Relief May Be Granted.

An analysis of a Rule 12(b)(6) motion to dismiss would not be complete without considering the requirements of *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007), where the Supreme Court held that a Complaint must contain "enough facts to state a claim to relief that is plausible on its face."  The Complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 1964-65.

In a more recent Supreme Court case, *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the court fittingly stated, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the Complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to

relief." The importance of *Iqbal* is that it brought clarity to and confirmation of the necessity for a plaintiff to plead more than general, conclusory, or unspecific allegations. The Plaintiffs' reaction is to suggest this court should give short shrift to these Supreme Court cases.

It is true, as Plaintiffs recite, "a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." *In re Guidant Corp., et al.*, 484 F.Supp.2d 973, 977 (D. Minn. 2007). But, the Plaintiffs' Complaint is clearly of the type the *Twombly, Iqbal,* and *Guidant* courts meant to preclude. The Plaintiffs have utterly failed to set forth a specific set of facts— much less a single fact—demonstrating when GMAC took monies improperly from Plaintiffs or withheld monies unlawfully from Plaintiffs.[6] Plaintiffs' opposition memorandum asserts that hundreds of complaints have been filed by consumers, but such complaints are neither identified, particularly described, nor produced. The Court is left to speculate as to the nature of and bases for purported claims as well as the particulars of any involved contracts. Fatal to the Complaint is the complete lack of facts supporting the claim that any of the monies allegedly

---

6. Plaintiffs explain the failure to suggest such specific instances by claiming they have requested GMAC provide this information but that GMAC has refused. That argument is illogical, beyond common sense, and simply untrue because it is Plaintiffs who sold the cars involved in the transactions at issue, maintained a record of those transactions, and provided a record of those transactions to GMAC upon GMAC requesting such information.

held by GMAC during a certain period of time were GMAC's responsibility to pay to the State or unidentified non-parties.

## II.    Each and every count fails as a matter of law.

Section I of this memorandum states why the entire Complaint must be dismissed for failure to allege an injury-in-fact.  This section details, count by count, the insufficiencies of Plaintiffs Complaint on both standing and failure to state a claim grounds.   Each count in Plaintiffs' Complaint fails as a matter of law and should be dismissed. [7]

### A.    Count I – Conversion / Misappropriation of Monies.

Essential to a conversion claim is a right to the property allegedly converted and damages sustained by Plaintiffs as a result.  *See Brunswick-Balke Collender Co v. Brackett, 37 Minn 58, 33 N.W. 214 (1887).*  Plaintiffs allege no right to the monies allegedly converted.  In point of fact, Plaintiffs go further to state the funds supposedly converted were "those monies that were never legally those of

---

7.  Plaintiff's opposition memorandum claims that GMAC's judgments against plaintiff Southview Chevrolet and plaintiff Walden Fleet should be disregarded, claiming they were obtained "through a default situation".  This representation must be corrected, as it has the potential to mislead the court.  Both Southview and Walden Fleet served Answers in the respective state court actions, so GMAC proceeded via motions for summary judgment.  Those motions were served on Southview and Walden Fleet – by delivery to Mr. Mohrman, their counsel of record.  Copies were also sent to Mr. Skolnick.  (See Second Affidavit of Michael Haag, Exhibits 4 and 5).   GMAC appeared at the scheduled hearings on the summary judgment motions – and received judgments in their favor.  Plaintiffs' reasons for discounting these judgments likely has to do with the fact that most, if not all of the claims asserted herein are mandatory counterclaims which should have been, but were not, asserted in the state court actions.

Plaintiffs for GMAC to attach or apply towards the outstanding debts of Plaintiffs…"  (Opposition Memorandum, p. 21).

Plaintiffs' allegations surrounding the TTL and lien monies boil down to this: the money belongs to someone else.  They fail therefore to meet the most basic element of a conversion claim.

### B.  Count II - Violation of Minn. Stat. § 297B.10(b) / Breach of Contract

Plaintiffs offer no legal support for their contention GMAC could be liable as a secured lender under Minn. Stat. § 297B.10(b).[8]  Plaintiffs make a conclusory assertion in their opposition memorandum that GMAC and Plaintiffs "had the concurrent legal responsibility" to remit the funds to the State and to lien holders, but cite no case law or other authority for the assertion, or for the extension of the scope of the statute to a secured party receiving proceeds from a sale arguably subject to the statute.

That statute applies by its terms only to those who "collect" taxes "from purchasers".  GMAC is a financing company.  It sold no vehicles at Plaintiffs' dealerships.  It entered into no transactions with vehicle purchasers at Plaintiffs' dealerships.  As such, under the plain language of the statute, it did not "collect" taxes "from a purchaser" and has no liability to the State for those taxes.

---

8.  Minn. Stat. §297B.10(b):  "Any person who collects the tax imposed under this chapter from a purchaser and willfully fails to remit the tax is guilty of a felony."

Plaintiffs allege no cognizable damages they directly suffered as a result of GMAC's conduct.  Again, damages are an essential element to a breach of contract claim.  *See Commercial Assocs., Inc. v. Work Connection, Inc.,* 712 N.W.2d 772, 782 (Minn. App. 2006).  Plaintiffs complain that GMAC exposed them to substantial liability by failing to turnover proceeds to third parties but have alleged no specific actual liability to Plaintiffs in any such circumstance.

The Plaintiffs' failure to yet again sufficiently allege a specific damage amount as a result of GMAC's alleged conduct is fatal to its claims.  The Complaint and Plaintiffs' supporting memorandum fail to surmise any instances where GMAC retained funds belonging to third parties

### C.    Count III - Lender Control Liability

Any alleged exercise of control by GMAC over any of Plaintiffs' cash was expressly provided by the lending documents by and between GMAC and the Plaintiffs and in accordance with the Uniform Commercial Code, Minn. Stat. §336.9-607.  The article on lender liability cited by the Plaintiffs supports GMAC's position because it recognizes the only time a lending institution can be held liable is when the control is so pervasive that the subservient entity becomes a mere instrumentality for the creditor.  *See* Mannino, E., *Lender Liability and Banking Litigation*, Ch. 6 (2009).  The requisite amount of control necessary to impose liability on a creditor requires a showing of complete, substantial, and

pervasive control, as in the case of *In re American Lumber Co.*, 5. B.R. 470 (D.

Minn. 1980), and its progeny.  In *American Lumber*, the court found the creditor

had exercised control because it took a controlling interest of the debtor's stock, it

was the debtor's sole source of credit, it exclusively controlled the management

decisions of the debtor, and it forced the termination of employees to effectuate its

wishes regarding the debtor's business.  *Id.* at 478.  The Plaintiffs have failed to

allege any facts sufficient to meet the standard in *American Lumber*.  That is

because no such pervasive control exists here.  There are no allegations GMAC

was, in effect, running the day-to-day operations of the Plaintiffs' dealerships; no

allegations that GMAC fired employees; no allegations that GMAC's conduct in

insisting on payment of proceeds on sale of its collateral manifested control of the

business.

### D.    Count IV - Breach of Fiduciary Duties

First and foremost, the relationship between a bank (lender) and its customer

(borrower) is one of creditor and debtor, not fiduciary.  *Boone v. Wells Fargo

Bank, N.A.*, 2009 WL 2086502 (D.Minn. 2009).  Plaintiffs cite to *H Enterprises

Intern., Inc. v. General Elec. Capital Corp.*, 833 F.Supp. 1405 (D.Minn. 1993), but

that case stands for the same proposition - a debtor-creditor relationship is not

fiduciary in nature unless special circumstances exist.  *Id.* at 1441.  In fact, even if

a debtor places "complete trust" in the creditor, "that fact alone does not give rise

to a fiduciary duty under Minnesota law." *Id.* (citing *Minn. Municipal Power v. St. Peter*, 433 N.W.2d 463, 468 (Minn.Ct.App. 1988).  Plaintiffs allege in a conclusory fashion that they relied upon GMAC's superior knowledge and experience in handling the TTL and lien monies when, in reality, Plaintiffs handled those funds on a day-to-day basis.

These allegations are devoid of any particular factual circumstances which would allow the court to find a fiduciary duty exists. *See, Iqbal*, 129 S.Ct. 1937, 173 L.Ed.3d 868 (2009).  The Plaintiffs have pointed to no specific facts suggesting a special relationship existed with GMAC.  To the contrary, the Plaintiffs acknowledge GMAC was simply acting as a creditor with a security interest in the Plaintiffs' assets.  This is a case of ordinary business liquidation as a result of the Plaintiffs defaults.  Since there is no special relationship, the breach of fiduciary duty claim fails as a matter of law.

### E.     Count V - Constructive Trust

A constructive trust may only be imposed where the plaintiff shows "the existence of a fiduciary relation and the abuse by defendant of confidence and trust bestowed under it to *plaintiff's* harm." *See Dietz v. Dietz,* 244 Minn. 330, 332-33, 70 N.W.2d 281*,* 284 (1955*)* (emphasis added); *Wilcox v. Nelson*, 227 Minn. 545, 550, 35 N.W.2d 741, 744 (1949).   As noted above, there was no fiduciary relationship between GMAC and Plaintiffs; they had a lender / borrower

relationship.  And, though *Dietz* suggests that the "fiduciary relationship" requirement is flexible in a constructive trust case, Plaintiffs allegations do not fulfill those requirements.  Specifically, the Unjust Enrichment count of the Complaint fails to allege any facts of "justifiable reliance" in this commercial lending transaction.  Further, Plaintiffs cite no case in which a party who has no claim to the property at stake was allowed to assert a claim for a constructive trust.

Here, the basis of Plaintiffs' claim is not their own harm but claimed damages sustained by non-parties, whom Plaintiffs claim to "represent".  (Opposition memorandum, p. 26).

The case relied upon by Plaintiffs, *In re Erikson*, 337 N.W.2d 671, 674 (Minn. 1983), is unpersuasive because it is factually dissimilar.  Plaintiffs cite to the case presumably because the court there did establish a constructive trust; however, the underlying unjust enrichment was obvious because the estate had received the benefit of an individual's financial contributions for the maintenance of the decedent's home. *Id.*  There was no question of standing and no question that the plaintiff had an actual claim to the contested property.  *Id.*

Plaintiffs contend their possessory right in the funds at issue provides them with sufficient standing to support imposition of a constructive trust.  This "possessory right" is not alleged in the Complaint, and Plaintiffs have cited no case supporting a claim by one who does have actual rights to the property.  Instead, the

Plaintiffs persist in asserting and wholly relying upon the rights of unidentified third parties.  The facts as presented by Plaintiffs cannot support a constructive trust claim.

### F.     Count VI - Unjust Enrichment

The premise of an unjust enrichment claim works against Plaintiffs.  Unjust enrichment is meant to preclude a party from retaining a benefit at the expense of another.  *See Holman v. CPT Corp.,* 457 N.W.2d 740, 745 (Minn. App. 1990); *Bykov v. Radisson Hotels Int'l*, 221 Fed.Appx. 490 (8th Cir. Minn. 2007); *Peterson v. Fairview Health Services*, 2005 WL 226168 *8 (D. Minn. 2005).  Plaintiffs cite no case law in support of their arguments that somehow they are entitled to recover under an unjust enrichment theory even though they are not entitled to a single dollar from GMAC.  Without this factual basis, Plaintiffs cannot establish they have been deprived of funds they would otherwise be entitled to receive.  The unjust enrichment claim is an effort to hold GMAC responsible for funds allegedly owed to unidentified third parties, a fact which precludes unjust enrichment as a matter of law.

### G.     Count VII - Demand for Accounting

A demand for an accounting is only appropriate where a fiduciary relationship exists.  *See Security Sav. Bank v. Green Tree Acceptance, Inc.*, 739 F.Supp. 1342, 1352 (D.Minn. 1990).  As noted earlier, the Plaintiffs have offered

no facts to support the claim that a fiduciary relationship existed between the Plaintiffs and GMAC.  Plaintiffs did not entrust GMAC with their property, but rather voluntarily gave GMAC certain cash pursuant to the underlying lending documents.

Plaintiffs ask this court to order GMAC to account for monies belonging to unidentified third parties.  Plaintiffs have asserted neither standing nor sufficient facts to support its claim for an accounting and this count must be dismissed.

## CONCLUSION

Plaintiffs have failed to allege that GMAC owes them a single dollar. Rather, they seek to recover monies that Plaintiffs allege belong to the State of Minnesota or other non parties whom they fail to identify in their Complaint. Because Plaintiffs have failed to allege a sufficient "injury in fact", they have no standing, and this court is therefore without subject matter jurisdiction.  Further, each individual cause of action is independently subject to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  GMAC asks this court to dismiss the Complaint in its entirety.

**FOLEY & MANSFIELD, P.L.L.P.**

Dated: March 17, 2010          By:   s/ Michael W. Haag
                                     Michael W. Haag (#39007)
                                     Thomas J. Lallier (#163041)
                                     Jared Kemper (#0390427)
                                     250 Marquette Avenue, Suite 1200
                                     Minneapolis, MN 55401
                                     (612) 338-8788

                                     **Attorneys for Defendant**